NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-5354

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

RURAL EMPOWERMENT ASSOCIATION FOR COMMUNITY HELP, et al.,
*Plaintiffs/Appellants*,

v.

ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Defendants/Appellees*.

---

Appeal from the United States District Court for the District of Columbia
No. 1:18-CV-02260 (Hon. District Judge Timothy J. Kelly)

---

**FINAL BRIEF FOR APPELLEES**

---

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

BRIAN C. TOTH
ROBERT STOCKMAN
MATTHEW R. OAKES
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
matthew.oakes@usdoj.gov

Of Counsel:

NOEL M. JOHNSON
*Attorney*
U.S. Environmental Protection Agency

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

All parties and intervenors appearing in this court are listed in the Opening Brief of Plaintiffs-Appellants. Amici are the American Lung Association and the Medical Society Consortium on Climate and Health.

### B. Rulings Under Review

References to the rulings at issue appear in the Opening Brief of Plaintiffs-Appellants.

### C. Related Cases

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).

/s/ *Matthew R. Oakes*
Matthew R. Oakes

Counsel for Appellees

## TABLE OF CONTENTS


CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..... i

TABLE OF AUTHORITIES ..... iv

GLOSSARY ..... ix

INTRODUCTION ..... 1

STATEMENT OF JURISDICTION ..... 2

STATEMENT OF THE ISSUE ..... 3

PERTINENT STATUTES AND REGULATIONS ..... 3

STATEMENT OF THE CASE ..... 3

A. Statutory and regulatory background. ..... 3

B. Factual background ..... 6

C. Proceedings below ..... 8

SUMMARY OF ARGUMENT ..... 10

STANDARD OF REVIEW ..... 14

ARGUMENT ..... 14

I. The 2019 Rule advances the best reading of EPCRA. ..... 15

A. Under the ordinary meaning of the phrase, release of air emissions from animal waste on farms "occurs in a manner" not requiring CERCLA notification. ..... 15

B. EPCRA's structure, purpose, and legislative history also support the 2019 Rule's conclusion that air emissions from animal waste on farms are not subject to EPCRA's reporting requirements. ..... 18

C. CERCLA's context, and prior agency practice and legislative history also support EPA's interpretation..........................25

D. Plaintiffs' contrary arguments lack merit..........................................28

II. The 2019 Rule is consistent with FARM Act Legislative history. ...........................................................................................32

CONCLUSION ...........................................................................................36

CERTIFICATE OF COMPLIANCE ...........................................................37

# TABLE OF AUTHORITIES

## Cases

*Agnew v. Gov't of the D.C.*,
920 F.3d 49 (D.C. Cir. 2019)....................16

*ArQule, Inc. v. Kappos*,
793 F.Supp.2d 214 (D.C. Cir. 2011)....................14

*Blitz v. Donovan*,
740 F.2d 1241 (D.C. Cir. 1984)....................33

*Carlson v. Postal Regul. Comm'n*,
938 F.3d 337 (D.C. Cir. 2019)....................33

*City of Clarksville v. FERC*,
888 F.3d 477 (D.C. Cir. 2018)....................15

*Conn. Nat'l Bank v. Germain,*
503 U.S. 249 (1992)....................14

*Eagle Pharmaceuticals, Inc. v. Azar*,
952 F.3d 323 (D.C. Cir. 2020)....................33

*Earthworks v. Dep't of the Interior*,
105 F.4th 449 (D.C. Cir. 2024)....................27

*Engine Mfrs. Ass'n v. EPA*,
88 F.3d 1075 (D.C. Cir. 1996)....................34

*Feliciano v. Department of Transportation*,
605 U.S. 38 (2025)....................16

*Huls Am. Inc. v. Browner*,
83 F.3d 445 (D.C. Cir. 1996)....................35

*Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*,
142 F.4th 757 (D.C. Cir. 2025)....................14

*Jawad v. Gates*,
832 F.3d 364 (D.C. Cir. 2016)....................................................................30

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988)...................................................................................14

*Keeffe v. Library of Congress*,
777 F.2d 1573 (D.C. Cir. 1985)..................................................................34

*Keene Corp. v. United States*,
508 U.S. 200 (1993)...................................................................................30

*Kirtsaeng v. John Wiley & Songs, Inc.*,
568 U.S. 519 (2013)...................................................................................34

*Kisor v. Wilkie*,
588 U.S. 558 (2019)...................................................................................27

*Lissack v. Comm'r*,
125 F.4th 245 (D.C. Cir. 2025)..................................................................23

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)...................................................................14, 23, 27

*MCI Telecomms. Corp. v. AT & T Co.*,
512 U.S. 218 (1994)...................................................................................16

*National Wildlife Federation v. Gorsuch*,
693 F.2d 156 (D.C. Cir. 1982)....................................................................23

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017)...................................................................................33

*Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
103 F.4th 45 (D.C. Cir. 2024)....................................................................18

*Planned Parenthood Federation of America, Inc. v. Heckler*,
712 F.2d 650 (D.C. Cir. 1983)....................................................................24

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998)...................................................................................4, 24

*United States v. Ron Pair Enterprises, Inc.*,
489 U.S. 235 (1989)....................................................................................34

*Waterkeeper All. v. Env't Prot. Agency*,
853 F.3d 527 (D.C. Cir. 2017)..............................................................1, 4, 7

**Statutes**

5 U.S.C. §§ 701-706............................................................................................2

28 U.S.C. § 1291 ..................................................................................................3

28 U.S.C. § 1331 ..................................................................................................2

42 U.S.C. § 4321 *et seq.*.........................................................................................2

42 U.S.C. § 9601(8) ............................................................................................31

42 U.S.C. § 9601(14) ..................................................................................5, 20, 21

42 U.S.C. § 9601(22) ...................................................................26, 29, 30, 31, 32

42 U.S.C. § 9603 ..................................................................................................7

42 U.S.C. § 9603(a) ........................................................4, 12, 18, 20, 22, 35

42 U.S.C. § 9603(e) ..............................................................................................7

42 U.S.C. § 9603(e)(1)..........................................................................................25

42 U.S.C. § 9603(e)(1)(A) .................................................................13, 25

42 U.S.C. § 9603(e)(1)(B) ................................. 3, 6, 11, 14, 17, 29, 30, 31, 32, 36

42 U.S.C. § 9603(f)..............................................................................................28

42 U.S.C. § 9603(f)(1) ........................................................................................26

42 U.S.C. § 9603(f)(2) .....................................................................6, 12, 29, 31

42 U.S.C. § 11001 *et seq.*...................................................................................2, 4

42 U.S.C. § 11002(a)(2) ........ 5, 6, 20

42 U.S.C. § 11002(a)(4) ........ 6

42 U.S.C. § 11004 ........ 4

42 U.S.C. § 11004(a) ........ 4, 5, 7, 26

42 U.S.C. § 11004(a)(1) ........ 5, 12, 19

42 U.S.C. § 11004(a)(2) ........ 2, 3, 5, 11, 15, 18, 19, 21, 22, 26, 35

42 U.S.C. § 11004(a)(2)(C) ........ 15, 28, 30

42 U.S.C. § 11004(a)(3) ........ 5

42 U.S.C. § 11049(4) ........ 4

Pub. L. No. 99-499, 100 Stat. 1613 (Oct. 17, 1986) ........ 4, 16

Pub. L. No. 115-141, 132 Stat. 348 (March 23, 2018) ........ 7, 11

**Rules**

Fed. R. App. P. 4(a)(1)(B) ........ 3

**Regulations**

40 C.F.R. Pt. 302.4 ........ 20

40 C.F.R. § 302.8 ........ 28

40 C.F.R. Pt. 355 ........ 5, 20

52 Fed. Reg. 13378-01 (April 22, 1987) ........ 6, 22, 26, 27

73 Fed. Reg. 76,948 (Dec. 18, 2008) ........ 7

83 Fed. Reg. 56,791 (Nov. 14, 2018) ........ 7

84 Fed. Reg. 27,533 (Jun. 13, 2019) ........ 8, 10, 21, 22, 25

88 Fed. Reg. 80,222 (Nov. 17, 2023) ....................................................................8

**Other Authorities**

115 Cong. Rec. S1925 (daily ed. Mar. 22, 2018) ..................................................34

H.R. Conf. Rep. No. 99–962 (Oct. 3, 1986) ...............................................12, 24, 27

Manner, American Heritage Dictionary (2d College Ed. 1982)........................16, 18

Occur, American Heritage Dictionary (2d College Ed. 1982) ................................16

## GLOSSARY

| | |
|---|---|
| 2019 Rule | Amendment to Emergency Release Notification Regulations on Reporting Exemption for Air Emissions from Animal Waste at Farms; Emergency Planning and Community Right-to-Know Act, 84 Fed. Reg. 27,533 (June 13, 2019) |
| CERCLA | Comprehensive Environmental Response, Compensation, and Liability Act |
| EPA | Environmental Protection Agency |
| EPCRA | Emergency Planning and Community Right-to-Know Act |
| FARM Act | Fair Agricultural Reporting Method Act |

## INTRODUCTION

This is a case about whether emissions from livestock manure or other animal waste require emergency notification to state and local authorities. Section 304(a) of the Emergency Planning and Community Right-to-Know Act (EPCRA) contains an emergency notification provision that requires facilities (including farms) to report certain releases of "extremely hazardous substances." As this Court has recognized, each of EPCRA's notification requirements "piggyback" on the reporting requirements of section 103(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), "in one form or another." *Waterkeeper All. v. Env't Prot. Agency*, 853 F.3d 527, 533 (D.C. Cir. 2017). In 2018, Congress passed the Fair Agricultural Reporting Method (FARM) Act, which expressly exempts "air emissions from animal waste … at a farm" from CERCLA section 103 reporting requirements. In 2019, the Environmental Protection Agency (EPA) promulgated a final rule (the 2019 Rule) establishing that air emissions from animal waste on farms are exempt from EPCRA's emergency notification requirements. Plaintiffs, several environmental groups, challenge the 2019 Rule.

All parties agree that, given the FARM Act's express exemption, EPCRA does not require any reporting under its sections 304(a)(1) and 304(a)(3), provisions that require reports only when the release is reportable under CERCLA.

But one provision of EPCRA requires reporting of certain releases of extremely hazardous substances that are not subject to CERCLA section 103(a) when three conditions are met. One of those conditions is that a release need be reported under EPCRA if it "occurs in a manner which would require notification under section 103(a) of CERCLA." 42 U.S.C. § 11004(a)(2).

Plaintiffs argue that despite the FARM Act, air emissions from animal waste occur in a "manner" requiring CERCLA notification. This is incorrect. Because Congress exempted "air emissions from animal waste"—a "manner" of release—from CERCLA reporting, EPCRA's emergency notification provisions do not require reporting those emissions, either. As both EPA and the district court have explained, this conclusion flows from the pertinent provisions' plain meaning, the statutory structure, and the history of the two statutes. Plaintiffs' contrary arguments should be rejected.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arose under EPCRA, 42 U.S.C. § 11001 *et seq.*, the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*., and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

The district court entered final judgment disposing of all parties' claims on August 7, 2025. JA-186. Plaintiffs timely filed their notice of appeal on October

3, 2025, or 57 days later. JA-208; *cf.* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction to review the district court's judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

EPCRA requires a facility to provide emergency notice to state, regional, and local authorities if a release of an extremely hazardous substance "occurs in a manner which would require notification under section 103(a) of CERCLA." 42 U.S.C. § 11004(a)(2). "[A]ir emissions from animal waste … at a farm" are expressly exempt from CERCLA's notification requirements. 42 U.S.C. § 9603(e)(1)(B). The issue presented is whether "air emissions from animal waste … at a farm" "occur[] in a manner" requiring notification under CERCLA section 103(a), and thus under EPCRA's emergency notification provision.

## PERTINENT STATUTES AND REGULATIONS

All pertinent statutes and regulations are set forth in the Addendum following Plaintiffs brief.

## STATEMENT OF THE CASE

### A. Statutory and regulatory background.

Together, CERCLA and EPCRA require a facility to notify governmental authorities if it releases certain hazardous substances. Section 103(a) of CERCLA requires a facility to immediately notify the federal government when the facility

releases a reportable quantity of a CERCLA hazardous substance. 42 U.S.C. § 9603(a).

In 1986, Congress passed the Superfund Amendments and Reauthorization Act, which both substantially amended CERCLA and enacted EPCRA. Pub. L. No. 99-499, Title III, § 304, 100 Stat. 1613, 1733 (Oct. 17, 1986). Given this history, it is unsurprising that EPCRA's notification requirements all refer to reporting requirements under CERCLA in some way.[1] *See* 42 U.S.C. § 11004(a); *see also Waterkeeper All. v. EPA*, 853 F.3d 527, 533-34 (D.C. Cir. 2017) (describing interplay between EPCRA and CERCLA).

EPCRA reporting is directed to state, regional, and local agencies to inform the public about releases of hazardous and toxic chemicals, allowing authorities to respond in emergencies. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 86 (1998); 42 U.S.C. §§ 11001–11050. EPCRA imposes emergency notification requirements for facilities that produce, use, or store certain hazardous chemicals. 42 U.S.C. § 11004(a) (reporting requirements); *id.* § 11049(4) (defining facilities). EPCRA section 304 provides that such facilities must report releases above a set quantity of certain hazardous chemicals to the state emergency response commission and the local emergency planning committee. *Id.* § 11004.

---

[1] This brief uses the terms "notice requirements" and "reporting requirements" interchangeably.

EPCRA's emergency notice requirements cross-reference CERCLA. Specifically, EPCRA requires facilities to report the release of a hazardous chemical under three circumstances. *Id.* § 11004(a). Two of these circumstances require an EPCRA notice to be provided if section 103 of CERCLA also requires notification. *Id.* § 11004(a)(1), (a)(3). The third situation requires EPCRA reporting where a release of an extremely hazardous substance is not subject to CERCLA's notification requirements, but only if the release is: (1) not federally permitted; (2) exceeds the reportable quantity for the substance as determined by EPA; and, (3) "occurs in a manner which would require notification under section 103(a) of CERCLA." 42 U.S.C. § 11004(a)(2).

Through the third provision, EPCRA requires reporting of certain "extremely hazardous substances" identified by EPA that do not already fall within CERCLA's definition of "hazardous substance[s]." *Compare* 42 U.S.C. § 11002(a)(2); 40 C.F.R. Pt. 355 Appx. A (listing EPCRA extremely hazardous substances), *with* 42 U.S.C. § 9601(14) (defining hazardous substance for CERCLA). But Congress tempered this additional duty under EPCRA by requiring reporting only if the release "occurs in a manner" requiring notification under CERCLA. 42 U.S.C. § 11004(a)(2). EPA was initially directed to publish a list of extremely hazardous substances mirroring a 1985 list of chemicals, and EPA may revise that list considering factors including toxicity—the short- or long- term

health effects which may result from short-term exposure to the substance. *Id.* § 11002(a)(2); (a)(4).

As discussed *infra at* Argument § I.C, where releases occur in a particular manner, Congress has created exceptions to CERCLA section 103(a) reporting requirements. Some of those exceptions are not subject to EPCRA reporting requirements because they do not "occur[] in a manner" which would require notification under CERCLA. For example, Congress has exempted from section 103(a) reporting any release of a hazardous substance that "is a continuous release, stable in quantity and rate," provided those releases are reported annually, and unless there is a "statistically significant increase" from a prior year's quantity. 42 U.S.C. § 9603(f)(2). EPA has recognized that this exemption carries over to EPCRA because it exempts a "manner" of release from notification, *see* 52 Fed. Reg. 13378-01, 13,384 (April 22, 1987), even though the substances at issue may fall within EPCRA's scope.

In 2018, Congress enacted the FARM Act, which amended CERCLA section 103(e) to expressly exempt "air emissions from animal waste . . . at a farm" from section 103's notification requirements. 42 U.S.C. § 9603(e)(1)(B).

### B. Factual background

The question of whether and how to address reporting of air emissions from animal waste under both CERCLA and EPCRA has been the subject of several

rulemakings and lawsuits. On December 18, 2008, EPA published a final rule exempting all farms from reporting air releases of hazardous substances from animal waste under CERCLA section 103, 42 U.S.C. § 9603. 73 Fed. Reg. 76,948, 76,950 (Dec. 18, 2008) (2008 Rule). That rule provided a partial exemption of EPCRA reporting under section 304(a), 42 U.S.C. § 11004(a), for smaller farms, but that rule did not interpret section 304(a). *Id.* In 2017, this Court held that the 2008 Rule was not supported by CERCLA's statutory language and vacated it. *Waterkeeper All.*, 853 F.3d at 537–38.

Congress responded. On March 23, 2018, the FARM Act was signed into law. This Act amended CERCLA to exempt the reporting of air emissions from animal waste at farms. *See* Pub. L. No. 115-141, sections 1101-1103, 132 Stat. 348, 1147-48 (2018). This exemption was codified as CERCLA section 103(e). 42 U.S.C. § 9603(e).

Because of this exemption, EPA determined that air emissions from animal waste at farms need not be reported under EPCRA sections 304(a)(1) and (3), which require reporting only if required under CERCLA. In November 2018, EPA issued a proposed rule to codify the same exemption for EPCRA and to clarify that reporting was also not required under EPCRA section 304(a)(2) due to the relationship between the two statutes. 83 Fed. Reg. 56,791 (Nov. 14, 2018). In

June 2019, EPA issued the final rule challenged here. 84 Fed. Reg. 27,533 (Jun. 13, 2019).

### C. Proceedings below

Plaintiffs sued, challenging guidance EPA issued prior to the 2019 Rule. JA-001. After EPA issued the 2019 Rule, Plaintiffs amended their complaint to challenge it as well. JA-071.

Plaintiffs' amended complaint alleged claims under the Administrative Procedure Act, EPCRA and the National Environmental Policy Act. JA-110-112. As relevant to this appeal, Plaintiffs alleged that the June 2019 Rule was outside EPA's statutory authority. JA-110-112. Plaintiffs' similar challenges to EPA's guidance were dismissed, and that dismissal is not challenged here. JA-115. The National Pork Producers Council, the American Farm Bureau, the United States Poultry and Egg Association and the National Cattlemen's Beef Association, then intervened in support of EPA.

In 2021, the Biden administration directed federal agencies, including EPA, to review regulations that conflicted with the Administration's environmental policies. JA-130-131. As a result, the 2019 Rule was remanded to EPA. JA-133. In November 2023, EPA issued an advanced notice of proposed rulemaking seeking information to help develop regulations to reinstate the reporting of animal waste air emissions under EPCRA. *See* 88 Fed. Reg. 80,222 (Nov. 17, 2023).

Ultimately, however, EPA determined it would not change its position or reinstate the reporting requirement, and the parties moved to rescind the remand. JA-138.

On cross-motions for summary judgment, the district court granted EPA's motion and entered judgment for EPA and Intervenors. JA-188, 207. The district court held that EPA's 2019 Rule does not contravene EPCRA and was not arbitrary or capricious. JA-195-205.

As the district court explained, "[t]he parties agree that" releases from animal waste "are not reportable under EPCRA section 304(a)(1) or (a)(3)," and thus "the parties agree that whether such releases are reportable under EPCRA turns on whether the third provision—section 304(a)(2)—requires it." JA-195. After considering section 304(a)(2)'s requirements, the court explained that the dispute "narrow[s] further" to "whether these releases 'occur[ ] in a manner which would require notification under section 103(a).'" JA-197. "If the emissions do not occur in such a manner, reporting is not required, and the 2019 Rule does not contravene EPCRA." JA-197.

The district court agreed with EPA that "CERCLA's exemption for air emissions from animal waste at farms—an exemption targeting the 'nature' of such releases, or the 'way in which' these releases happen—means that such releases do not 'occur in a manner' that requires section 103(a) reporting for purposes of EPCRA's section 304(a)(2)." JA-202. To support this holding, the court

concluded that the FARM Act's exemption is a "manner of release" because it specified that substances emitted "*from* animal waste *into the air* do not require reporting." JA-200 (emphasis in original). The district court recognized that CERCLA's definition of "release" is not the only way CERCLA establishes what "manner" of release requires reporting. JA-198. And the district court underscored that EPA's historic interpretations of the interplay between EPCRA and CERCLA are consistent with its interpretation in the 2019 Rule. JA-200-201.

Plaintiffs appealed, and the sole issue they present on appeal is whether EPA lacked statutory authority to promulgate the 2019 Rule under EPCRA.[2]

## SUMMARY OF ARGUMENT

The 2019 Rule correctly concluded that air emissions from animal waste at farms do not require reporting under EPCRA. Because the FARM Act exempted these types of releases from CERCLA reporting, the emissions "no longer 'occur[] in a manner' that would require notification under CERCLA." *See* 84 Fed. Reg. 27,535. This reading is supported by EPCRA's text, structure, purpose, and legislative history. The Court should affirm.

---

[2] Because Plaintiffs developed no argument in their Opening Brief that the 2019 Rule violated the National Environmental Policy Act or was otherwise arbitrary and capricious under the Administrative Procedure Act, any such arguments are forfeited on appeal.

EPCRA requires emergency notice when an extremely hazardous substance is released and that release is not subject to CERCLA's notice requirements, but only if the release "occurs in a manner which would require notification under section 103(a) of CERCLA." 42 U.S.C. § 11004(a)(2). In March 2018, Congress enacted the FARM Act, amending CERCLA to eliminate that statute's reporting requirements for "air emissions from animal waste (including decomposing animal waste) at a farm." 42 U.S.C. § 9603(e)(1)(B), *see* Pub. L. No. 115-141, § 1102, 132 State. 348, 1148 (2018). That amendment specifies a "manner" of release that is exempt from notification under CERCLA.

The ordinary meaning of the word "manner" supports this conclusion. All parties agree that "manner" is defined as the way a release occurs. Under this definition, the phrase "air emissions from animal waste … at a farm," describes the "manner" of release. In the FARM Act, Congress exempted a particular type of release, "air emissions," emanating from a particular source, "animal waste," at a particular location, "a farm." Because those circumstances describe the "manner" in which a release occurs, such releases are exempt from CERCLA notice.

This plain-language reading is supported by the structure, purpose, and legislative history of both EPCRA and CERCLA. CERCLA excludes specific *substances* such as natural gas and crude oil from its definition of hazardous substances and includes only substances that meet defined characteristics. Only

the release of defined hazardous substances requires CERCLA notice. 42 U.S.C. § 9603(a). EPCRA's notice requirements apply to a separate list of "extremely hazardous substances" that are defined by different criteria. 42 U.S.C. § 11004(a)(1). EPCRA section 304(a)(2) requires emergency notifications for a release of an EPCRA extremely hazardous substance that is not a CERCLA hazardous substance, but only where the release otherwise "occurs in a manner" requiring CERCLA 103 notification.

The conference report addressing the EPCRA emergency notice requirement supports this reading. It states that the "occurs in a manner" language allows for EPCRA notice "where there is a release of an extremely hazardous substance that would require notice under section 103(a) of CERCLA but for the fact that *the substance* is not specifically listed under CERCLA as requiring such notice." H.R. Conf. Rep. No. 99–962, at 284 (1986) (emphasis added).

Plaintiffs argue that an EPCRA "manner" of release is equivalent to the CERCLA definition of release. That argument is an incorrect attempt to rewrite the statutory language. Congress excluded other "manner[s]" of release from CERCLA reporting requirements, even where such releases otherwise would be a CERCLA-defined "release." For example, CERCLA exempts any release that is "continuous" and "stable in quantity and rate" from CERCLA 103(a) notice requirements, so long as other notification requirements are met. 42 U.S.C.

§ 9603(f)(2). Congress also exempted "the application of a [registered] pesticide product" from CERCLA notice requirements. 42 U.S.C. § 9603(e)(1)(A). EPA has long interpreted these provisions to be a "manner" of release, and neither are excluded from the CERCLA definition of a "release."

EPA's interpretation in the 2019 Rule is consistent with EPCRA's purpose. EPCRA seeks to notify state and local governments of emergency conditions. Congress, however, determined that routine air emissions from decaying animal waste on farms are not a manner of release subject to reporting under CERCLA Section 103. And EPCRA expressly states that where Congress excludes a "manner" of release from CERCLA, EPCRA emergency notice is not required.

Finally, EPA's interpretation is consistent with the FARM Act's legislative history. First, that legislative history shows, at most, that some congressional members did not seek to amend EPCRA. EPA's 2019 Rule, however, is not based on the premise that the FARM Act amended EPCRA. Instead, EPA concludes that EPCRA's longstanding text does not require emergency notice for a release that "occurs in a manner" not requiring CERCLA notice. And the FARM Act specifies that releases occurring in a certain manner—air emission from animal waste on farms—do not require CERCLA notification. Second, Plaintiffs rely on particularly weak forms of legislative history like floor statements and witness

testimony. Third, even if individual legislators might prefer a different outcome, EPA's interpretation in the 2019 Rule is compelled by EPCRA's text.

The district court's judgment upholding the Rule should be affirmed.

## STANDARD OF REVIEW

The Court reviews the district court's summary judgment de novo. *Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*, 142 F.4th 757, 766 (D.C. Cir. 2025). Courts interpret statutes de novo using traditional tools of construction. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 403 (2024). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp v. Cartier, Inc*, 486 U.S. 281, 291 (1988). As part of this analysis, this Court presumes "that a legislature says in a statute what it means and means in a statute what it says there." *ArQule, Inc. v. Kappos*, 793 F.Supp.2d 214, 220 (D.C. Cir. 2011) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)).

## ARGUMENT

In the FARM Act, Congress exempted "air emissions from animal waste (including decomposing animal waste) at a farm" from CERCLA's notification requirements. 42 U.S.C. § 9603(e)(1)(B). That much is undisputed. Nor is it disputed that EPCRA reporting of a CERCLA-exempt release may be required if it

"occurs in a manner" requiring CERCLA notification. *Id.* § 11004(a)(2). Accordingly, the parties' disagreement collapses to a single inquiry: did Congress, through the FARM Act, exclude a "manner" of release from CERCLA notification? The answer is yes, and EPCRA notification is not required. Text, context, consistent past interpretations, and legislative history together compel the conclusion that by exempting air emissions from animal waste at a farm, Congress exempted a "manner" of release. EPA's 2019 Rule to that effect should be upheld.

## I. The 2019 Rule advances the best reading of EPCRA.

### A. Under the ordinary meaning of the phrase, release of air emissions from animal waste on farms "occurs in a manner" not requiring CERCLA notification.

"In addressing a question of statutory interpretation, we begin with the text." *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018). Under EPCRA section 304(a)(2), emergency notification requirements apply "only if the release," among other conditions, "occurs in a manner which would require notification under section 103(a) of CERCLA." 42 U.S.C. § 11004(a)(2)(C). The ordinary meaning of the terms "occur" and "manner" demonstrate that, by exempting "air emissions from animal waste … at a farm" from CERCLA notice requirements, Congress excluded a "manner" of release. This interpretation, which EPA adopted in the 2019 Rule, is the best reading of EPCRA.

Congress enacted EPCRA, including section 304 and the "occurs in a manner" language, in 1986. Superfund Amendments and Reauthorization Act of 1986. Pub.L. 99-499, Title III, § 304, Oct. 17, 1986. That phrase is not defined. This Court considers ordinary meaning to determine the meaning of undefined terms. *Feliciano v. Department of Transportation*, 605 U.S. 38, 45 (2025). Where a term is not defined, the Court typically consults dictionary definitions to determine ordinary meaning. *See Agnew v. Gov't of the D.C.*, 920 F.3d 49, 57 (D.C. Cir. 2019); *MCI Telecomms. Corp. v. AT & T Co.*, 512 U.S. 218, 228 (1994) (relying on dictionaries to ascertain term's meaning). And interpreted as defined by a contemporaneous dictionary, the text of section 304 becomes quite clear.

The common meaning of the term "occur" is "[t]o take place; come about," and the term "manner" means "[a] way of doing something or the way in which a thing is done or happens." Occur, Manner, American Heritage Dictionary (2d College Ed. 1982). Thus, when Congress specifies that an emission that comes about or takes place in a specified way is exempt from CERCLA notification requirements, that emission is also exempt from reporting under EPCRA section 304(a)(2). Here, Congress exempted air emissions from animal waste at a farm from CERCLA notification, and it framed that exemption by defining emissions that "occur in a manner" not requiring notification under EPCRA, either.

Both the United States and Plaintiffs agree that what matters is whether Congress exempted the "way a release occurs." JA-197 (noting this agreement). By exempting the release of "[a]ir emissions from animal waste . . . at a farm," the FARM Act describes precisely the "manner" in which that release "occurs" under the ordinary meaning of those terms. *Cf.* Pl. Br. 19 (acknowledging that "'manner,' in the context of § 11004(a)(2)(C), describes how a release happens"). Specifically, the FARM Act describes emissions that emanate "from" a particular source, "animal waste," through a specified physical medium, "air." That exemption is limited to emanations from animal waste located at a specific location, a "farm." The district court agreed, stating that the animal waste CERCLA exemption specifies "that substances emitted *from* animal waste at a farm *into the air* do not require reporting." JA-200.

The examples below illustrate that "air emissions from animal waste" are a "manner" of release. As Plaintiffs highlight, manure, a type of animal waste, emits ammonia as it decomposes. Pl. Br. 4; JA-217. That ammonia, if emitted into the air from manure at a farm, would be exempt from CERCLA's notification requirements. 42 U.S.C. § 9603(e)(1)(B). However, if ammonia were released from manure in a different way, such as into water rather than air, that release would not be exempt under section 103(e)(1)(B)'s terms. Likewise, ammonia emitted into the air that was not emanating from manure, but instead from a

ruptured ammonia storage tank, would not be exempt. And ammonia emitted into the air from animal waste contained in a storage lagoon that was not located on a farm would not be exempt, either. Put another way, changes to the way in which the release happens determine whether the exemption applies. That is so because "the way in which a thing is done or happens" is the definition of the word "manner." American Heritage Dictionary (2d College Ed. 1982).

This ordinary-language reading of EPCRA's "occurs in a manner" language, as harmonized with the FARM Act, is bolstered by EPCRA's structure, purpose, and history, as next discussed.

**B. EPCRA's structure, purpose, and legislative history also support the 2019 Rule's conclusion that air emissions from animal waste on farms are not subject to EPCRA's reporting requirements.**

Statutory text is read in the context of the entire statute and may also consider statutory structure, purpose, and context. *Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024). Analysis of EPCRA's structure supports the conclusion that EPCRA's reporting requirement, 42 U.S.C. § 11004(a)(2), responds to the fact that certain substances do not require notice under CERCLA section 103(a), *id.* § 9603(a).

In EPCRA Congress narrowly crafted language requiring emergency notification for certain substances "only if" the release "occurs in a manner" that would otherwise be covered by CERCLA. *Id.* § 11004(a)(2). As a historical

matter, Congress enacted EPCRA as part of the Superfund Amendments and Reauthorization Act of 1986, which amended CERCLA. *See supra* (pp. 4). In doing so, Congress carefully crafted EPCRA to borrow, in large part, from CERCLA's notification provisions while also acknowledging precise differences between the two statutes.

Specifically, Congress anticipated situations where a release might need to be reported under EPCRA even if that release was not subject to CERCLA's notice requirements. As a result, the EPCRA reporting requirements sweep more broadly than CERCLA's notice requirements. But this broader framing reflects the notion that specific *substances* are not subject to CERCLA's notice requirements, either because they are not "hazardous substances" under CERCLA or because CERCLA specifically excludes them from reporting. Where a substance is not subject to CERCLA's reporting requirements but is still an "extremely hazardous substance" under EPCRA, the language in 42 U.S.C. § 11004(a)(2) requires EPCRA notice if the "manner" of release would require reporting under CERCLA.

EPCRA and CERCLA notice requirements apply to different but overlapping lists of substances. Thus, the substances subject to reporting under EPCRA are not merely a logical subset of those requiring notice under CERCLA. EPCRA emergency notification requirements apply to "a release of an extremely hazardous substance." 42 U.S.C. § 11004(a)(1). Although EPCRA does not

define "extremely hazardous substance," EPA publishes a list of what meets the criteria specified by Congress. 42 U.S.C. § 11002(a)(2); 40 C.F.R. Pt. 355 Appx. A (listing extremely hazardous substances). CERCLA notice requirements, by contrast, apply to "any release … of a hazardous substance." 42 U.S.C. § 9603(a). A "hazardous substance" is broadly defined, and includes substances designated under other statutes or that meet certain characteristics. 42 U.S.C. § 9601(14). But even that broad definition under CERCLA does not cover every "extremely hazardous substance" EPA has identified for purposes of EPCRA. *Compare* 40 C.F.R. Pt. 355 Appx. A (listing extremely hazardous substances) *with* 40 C.F.R. Part 302.4 (listing hazardous substances).

Because a chemical might be an "extremely hazardous substance" under EPCRA but not a "hazardous substance" under CERCLA, Congress could not require EPCRA emergency notification for releases of extremely hazardous substances solely by relying on CERCLA's notice provisions. Not only are CERCLA's hazardous-substances criteria distinct from EPCRA's extremely hazardous-substance criteria, but CERCLA's definition of hazardous substance also expressly excludes certain substances. 42 U.S.C. § 9601(14). For example, CERCLA excludes petroleum (unless specifically listed or designated elsewhere in that statute), natural gas liquids, liquified natural gas, and synthetic gas useable for fuel. *Id.*

In response to these statutory differences, Congress carefully crafted EPCRA section 304(a)(2) to require EPCRA reporting for certain releases of extremely hazardous substances that are not defined as hazardous substances under CERCLA. For example, trimethylchlorosilane (Chemical Abstract Service No. 75-77-4) is designated as an extremely hazardous substance under EPCRA but not as a hazardous substance under CERCLA. 84 Fed. Reg. 27,536. Consequently, neither CERCLA nor EPCRA sections 304(a)(1) or (a)(3) requires reporting releases. But CERCLA also does not exclude a "manner" of releasing this substance; the substance just does not fall within CERCLA. Accordingly, under EPCRA section 304(a)(2), a release of trimethylchlorosilane must be reported if that release is not federally permitted and the release exceeds a quantity that EPA has determined requires notice. 42 U.S.C. § 11004(a)(2). The crucial point is that a trimethylchlorosilane release would not require notice under CERCLA because it is not defined as a CERCLA hazardous substance. This conclusion has nothing to do with the "manner" of release. For this reason, a release of trimethylchlorosilane falls within EPCRA section 304(a)(2).

As another example, crude oil is expressly excluded from the definition of a CERCLA "hazardous substance." 42 U.S.C. § 9601(14). Because of this exemption, an oil spill is not subject to notice requirements under CERCLA section 103(a). Unlike air emissions from animal waste at farms, Congress did not

exempt oil spills from CERCLA reporting based on the manner or nature of these releases. Instead, it just categorically excluded the substance from the statute's coverage. Thus, if an oil spill meets the first two criteria of EPCRA section 304(a)(2), emergency notification is required by EPCRA. This shows that releases can "occur[] in a manner" that would require notification under CERCLA section 103(a), 42 U.S.C. § 9603(a), if the substance, not the manner of release, was excluded.

EPA's interpretation of the language in EPCRA section 304(a)(2) has been consistent and was adopted contemporaneously with Congress's adoption of 42 U.S.C. § 11004(a)(2). Almost 40 years ago, EPA issued a regulation listing extremely hazardous substances subject to EPCRA's emergency release requirements. *See* Extremely Hazardous Substances List and Threshold Planning Quantities; Emergency Planning and Release Notification Requirements, 52 Fed. Reg. 13,378 (April 22, 1987). That regulation interprets the interplay of EPCRA and CERCLA consistently with EPA's interpretation here. *Compare* 52 Fed. Reg. at 13,385 (recognizing EPCRA emergency notice may be required even where the "petroleum exclusion" prevents CERCLA notice), *with* 84 Fed. Reg. 27,534, 27,536-37 (recognizing that "continuous releases" do not "occur in a manner" that requires EPCRA emergency notice). This Court gives an agency's contemporaneous construction of a statute persuasive value. *See, e.g., Lissack v.*

*Comm'r*, 125 F.4th 245, 259 (D.C. Cir. 2025) (acknowledging that consistent agency interpretations have persuasive value). Such consistent, contemporaneous construction supports EPA's general interpretation that substances not subject to CERCLA's notice requirements are subject to EPCRA emergency notice requirements if they are EPCRA extremely hazardous substances. *Loper Bright Enterprise*, 603 U.S. at 394 ("[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning."); *accord National Wildlife Federation v. Gorsuch*, 693 F.2d 156, 169 (D.C. Cir. 1982) (recognizing both consistency and contemporaneous construction as factors that this Court considers when interpreting statutes).

While the various statutes can be harmonized through EPA's interpretation without resort to the legislative history, that history also shows that Congress added section 304(a)(2) and its "occurs in a manner" qualifying language to require EPCRA reporting only when a *substance* is not a listed CERCLA hazardous substance. In particular, the conference committee report addressing EPCRA discussed the scenarios that require reporting. That committee added the "occurs in a manner" language to resolve a conflict between the House and Senate versions of the proposed EPCRA emergency notification provisions. It was intended to provide for EPCRA emergency notice "where there is a release of an

extremely hazardous substance that would require notice under section 103(a) of CERCLA but for the fact that *the substance* is not specifically listed under CERCLA as requiring such notice." H.R. Conf. Rep. No. 99–962, at 284 (1986) (emphasis added). This shows that Congress in section 304(a)(2) accounted for the fact that releases of certain substances not falling within CERCLA's definition of a hazardous substance might need to be reported under EPCRA only if those releases that "occur[] in a manner" otherwise requiring reporting under CERCLA. *See Planned Parenthood Federation of America, Inc. v. Heckler*, 712 F.2d 650, 657 fn. 36 (D.C. Cir. 1983) (recognizing the conference committee reports are "particularly weighty" indicators of congressional intent).

The purpose of EPCRA is not served by reporting air emissions of animal waste. A primary purpose of the EPCRA framework is "to provide for emergency response in the event of [a] health-threatening release." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 86 (1998). Air emissions from animal waste at farms are routine, and by passing the FARM Act Congress determined that air emissions from animal waste was not a manner of release that warrants reporting under section 103(a) CERCLA. EPCRA's text shows that where Congress creates such an exemption, emergency notice is not required.

In sum, the text and structure of EPCRA combine to show that "where a CERCLA reporting exemption or the reason a release is not subject to CERCLA

reporting is *unrelated to the manner* in which such releases occur, EPCRA section 304(a)(2) may compel reporting of such releases." 84 Fed. Reg. 27,536 (emphasis in original). Animal waste, as it decomposes, emits specific substances, including both ammonia and hydrogen sulfide. Pl. Br. at 4. But Congress did not exclude either ammonia or hydrogen sulfide from CERCLA's notice requirements. Instead, Congress excluded a manner of release, "air emissions from animal waste (including decomposing animal waste) at a farm." 42 U.S.C. § 9603(e)(1). EPA's interpretation in the 2019 Rule best effectuates Congress's purpose, as inferred from both the text and statutory context.

**C. CERCLA's context, and prior agency practice and legislative history also support EPA's interpretation.**

1. EPA's interpretation of the FARM Act is bolstered by other provisions in CERCLA. Congress, in the FARM Act, exempted a distinctive manner of release from CERCLA notice provisions, and limited the "animal waste" exemption by media (release of "air emissions"), by source (from "animal waste"), and by place (at a "farm"). Congress took the same approach when outlining in CERCLA other manners of release that also do not require EPCRA notification.

For example, Congress also exempted "the application of a [registered] pesticide product" from CERCLA notice requirements. 42 U.S.C. § 9603(e)(1)(A). EPA has long interpreted this provision to exempt applications of

a registered pesticide from the emergency notice provision of EPCRA. 52 Fed. Reg. at 13,385 ("Because such releases are not reportable under section 103(a) of CERCLA, they are also exempt from release reporting under [42 U.S.C. § 11004(a)]."). Like the exception for "continuous or frequently recurring" releases, the exception for pesticides demonstrates that Congress can, and has, further provided that releases that occur in certain "manner[s]" do not require reporting under CERCLA section 103(a), even if they fall within the definition of "release" in section 101(22), 42 U.S.C. § 9601(22). Plaintiffs agree that the "continuous or frequently recurring" exception and the pesticide exception are based on a "manner" of release and are proper exemptions from EPCRA emergency notice requirements. Pl. Br. 23-25.

Congress also exempted facilities notification requirements under CERCLA 103(a) if a release has been reported under Subtitle C of the Solid Waste Disposal Act to the National Response Center. 42 U.S.C. § 9603(f)(1). Such a release is exempted, however, not because of the manner in which occurs, but because reporting the same release twice would be duplicative. Because the "manner" of release was not the basis for a CERCLA exemption, EPCRA emergency notice would be required under section 304(a)(2). 42 U.S.C. § 11004(a)(2). This demonstrates another meaningful application of the "occurs in a manner" language.

2. EPA regulations interpreting the term "manner" are consistent with the view, expressed in the 2019 Rule, that a manner of release that otherwise would fall within the definition of a CERCLA "release" is not subject to EPCRA's emergency notice requirement. "[G]overnmental interpretations of a statute may be 'powerful evidence' of its original meaning if they are 'early, longstanding, and consistent.'" *Earthworks v. Dep't of the Interior*, 105 F.4th 449, 458 fn. ‡ (D.C. Cir. 2024) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 594 (2019) (Gorsuch, J., concurring in judgment)). EPA's interpretation of "manner" is early, longstanding, and consistent. EPA recognized in 1987 that CERCLA's continuous-release exemption carries over to EPCRA because it is a "manner" of release. *See* 52 Fed. Reg. at 13,384 ("continuous releases" are "not reportable under section 304" because "such releases do not 'occur in a manner' which requires immediate reporting under section 103(a)"). EPA's consistent and longstanding interpretation of the word "manner" should inform this Court's review. *Loper Bright Enters.*, 603 U.S. at 394 (Courts may "seek aid from the interpretations of those responsible for implementing particular statutes" based on those agencies' "experience and informed judgment.") (cleaned up).

3. Legislative history also indicates that Congress intended to exclude continuous releases from EPCRA's emergency notice requirements. H.R. Conf. Rep. No. 99–962, at 285 (1986) ("[R]eleases which are continuous or frequently

recurring and do not require reporting under CERCLA are not required to be reported under [EPCRA section 304].”). Instead, those releases are subject to the annual reporting requirement set out in 42 U.S.C. § 9603(f). Recognizing this, EPA promulgated regulations allowing for continuous releases to be reported in a manner consistent with the requirements of section 103(f), 42 U.S.C. § 9603(f). 40 C.F.R. § 302.8. But those same releases do not need to be reported under EPCRA.

**D. Plaintiffs’ contrary arguments lack merit.**

Plaintiffs argue that an EPCRA “manner” of release is coextensive with the CERCLA definition of “release.” Pl. Br. 22-24. That interpretation would rewrite EPCRA and essentially nullify the Farm Act’s language restricting the reporting exemption “only” to those releases that “occur[] in a manner” requiring 103 notification. *See* 42 U.S.C. § 11004(a)(2)(C). If Congress had meant for *any* release under CERCLA to require reporting under this prong of section 304(a)(2), it would not have included subparagraph (C) at all. *See Id.* CERCLA itself specifies how a discharge otherwise falling within the definition of “release” is exempted from CERCLA’s notice requirements. Thus, Congress clearly anticipated that it would be able to narrow a “manner” in other provisions of CERCLA without amending the definition of release.

CERCLA defines “release” to include “any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping,

or disposing into the environment." 42 U.S.C. § 9601(22). Plaintiffs argue that Congress would not refer to "emissions" from a particular source to delineate a manner of emission. Pl. Br. 28. However, CERCLA itself excludes certain emissions based on source. For example, the definition of release excludes "emissions from the engine exhaust." 42 U.S.C. § 9601(22).

The definition of "release" in CERCLA section 101(22), 42 U.S.C. § 9601(22), is not the only place CERCLA establishes that the "manner" of certain releases means they do not require reporting. *See* JA-198. CERCLA exempts any release that is "continuous" and "stable in quantity and rate" from CERCLA's immediate notice requirements, so long as other notification requirements are met. *Id.*; 42 U.S.C. § 9603(f)(2). A "release" under the definition of section 101(22), 42 U.S.C. § 9601(22) that occurs in the "manner" described in section 103(f)(2), 42 U.S.C. § 9603(f)(2), would not require notification under CERCLA section 103(a).

Plaintiffs further contend that EPA's interpretation is flawed because the statute requires the exemption to address "a unique way of 'emitting.'" Pl. Br. 26, 28, and excluding "air emissions from animal waste (including decomposing animal waste) at a farm," 42 U.S.C. § 9603(e)(1)(B), does not accomplish that end. But Congress need not set forth a "unique way" of emitting to enact a meaningful exemption. EPCRA makes clear that its emergency notice requirements do not apply if a release "occurs in a manner" that is exempt from CERCLA notice

requirements. 42 U.S.C. § 11004(a)(2)(C). This Court should not read in a requirement for "uniqueness" where Congress did not include that term. *See Jawad v. Gates*, 832 F.3d 364 (D.C. Cir. 2016) ("We will not 'read[] a phrase into the statute when Congress has left it out.'" (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). Plaintiffs acknowledge that the exemptions for continuous releases and pesticides occur under "baseline conditions" or are "customary." *See* Pl. Br. 23-25. Just as those exemptions cover releases occurring in a manner that is not unique, so too the exemption for air emissions from animal waste on farms need not be unique.

In any event, the crux of Plaintiffs' argument seems to be that Congress did not exempt "air emissions from animal waste … at a farm" specifically enough. Pl. Br. 26-28. But the exemption set out at 42 U.S.C. § 9603(e)(1)(B) is both focused and clear. First, Congress exempted only "air emissions," though CERCLA regulates a broad range of releases. CERCLA addresses releases to air, water and into soil. For example, the definition of "release" includes releases of liquid such as spilling, leaking, pouring, injecting. 42 U.S.C. § 9601(22). And "release" also encompasses "leaching" and "dumping," which are common mechanisms by which hazardous substances enter soil. The statute further clarifies that release "into the environment" includes "the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous

substance." *Id.*; *see also id.* § 9601(8) (defining environment broadly to include, among other things, surface water, land surface, and ambient air). This language demonstrates the broad reach of CERCLA, and Congress's intent to cover soil contamination, water contamination, and air contamination.

Congress, in the FARM Act, exempted a specific manner of release from CERCLA's broad potential reach. In exempting "air emissions from animal waste … at a farm," Congress focused on releases into only one of the environmental media regulated under CERCLA, the "air." 42 U.S.C. § 9603(e)(1)(B). This is like the exclusion of "emissions from the engine exhaust of a motor vehicle" from the CERCLA definition of "release." 42 U.S.C. § 9601(22).

Second, "air emissions from animal waste … at a farm" contains additional limitations about the manner in which the exempted releases occur. *See* supra § I(A). These must be "air emissions *from animal waste*," not from tank spills, emissions from vehicles, sewage lagoon ruptures spilling liquid waste into water or any of the other myriads of potential releases. The exemption of emanations from a particular source is like Congress exempting a release of "emissions from the engine exhaust" of various motor vehicles. 42 U.S.C. § 9601(22). It also is like section 103(f)'s exemption for certain "continuous release[s] stable in quantity and rate" that is "from a facility…." 42 U.S.C. § 9603(f)(2).

Third, air emissions from animal waste must occur at a "farm," not from some other type of facility. This limitation that the air emissions must be from a specific place is also like Congress excluding any release "which results in exposure to persons within a workplace" from the CERCLA definition of "release." 42 U.S.C. § 9601(22). A limitation based on the location of the release, whether it be air emissions from a *farm* or any release that results in exposure within a *workplace* is consistent with other CERCLA statutory language.

* * *

Congress limited the "animal waste" exception to reporting under CERCLA section 103(a) by media by source, and by place. Those factors thus define the exception by the manner in which the releases occur: in terms of the way they happen. Congress has used similar language to exempt other types of releases from notification under CERCLA section 103(a), and EPA has consistently recognized that those exemptions carry over into EPCRA's emergency notification requirements. Plaintiffs' contention that 42 U.S.C. § 9603(e)(1)(B) is insufficiently "unique" is incorrect, and EPA's interpretation should be upheld.

## II. The 2019 Rule is consistent with FARM Act Legislative history.

Plaintiffs rely on FARM Act legislative history to argue that the CERCLA "animal waste" exemption is not a "manner" of release. This argument only serves to highlight that the FARM Act does not directly amend EPCRA, and all parties

agree on that point. However, EPCRA notice requirements are, and always have been, integrally tied to CERCLA. By amending CERCLA's notice requirements by exempting a "manner" of release, Congress necessarily exempted releases that "occur" in the same "manner" from EPCRA.

At the outset, reliance on the legislative history of the FARM Act is unnecessary here. Where the statutory text is clear, that is the end of the inquiry. *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 350 (D.C. Cir. 2019). When interpreting statutes, this Court examines legislative history as one of the traditional tools of statutory interpretation, but only to the extent such history reliably indicates what Congress intended otherwise ambiguous terms to mean. *Eagle Pharmaceuticals, Inc. v. Azar*, 952 F.3d 323, 330, 338 (D.C. Cir. 2020). Even if reference to legislative history is necessary, the legislative history here, including the legislative history discussed above, *supra* §§ I.B, I.C, is consistent with the ordinary meaning of the term "manner," and with the 2019 Rule.

Plaintiffs rely on a statement made by an individual Senator, Tom Carper. Pl. Br. 33. But floor statements by individual legislators "rank among the least illuminating forms of legislative history." *Eagle Pharmaceuticals, Inc.*, 952 F.3d at 463 (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017)); *see also Blitz v. Donovan*, 740 F.2d 1241, 1247 (1984) ("[L]egislators' remarks during a floor debate, even in the Congress that enacted the legislation, do not control statutory

interpretation and generally are not accorded significant weight."). Plaintiffs also cite a Congressional Research Service report and a Poultry Industry executive to support the same argument. Pl. Br. 34-35. Congressional Research Service reports generally provide no evidence of congressional intent. *See Keeffe v. Library of Congress*, 777 F.2d 1573, 1574-75 (D.C. Cir. 1985) (recognizing the research functions of the Congressional Research Service). Similarly, statements by private witnesses testifying before Congress provide little insight into congressional intent. *Kirtsaeng v. John Wiley & Songs, Inc.*, 568 U.S. 519, 550 (2013) (considering congressional report rather than industry witness's remarks when ascertaining statutory meaning).

Even if the Court considers Senator Carper's statement, it does nothing to undermine the ordinary meaning of EPCRA. Statutory interpretation begins and ends with the plain language of that statute where, as here, the text is clear. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). While the Court may consider legislative history and statutory purpose as interpretive aids, these tools cannot override plain statutory text. *See Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996).

As Plaintiffs point out, Senator Carper wanted to ensure that the FARM Act made "no changes to how extremely hazardous substances should be reported under EPCRA." 115 Cong. Rec. S1925 (daily ed. Mar. 22, 2018). And, as

discussed above, *supra* §§ I.A, I.B, EPCRA has not been amended in any way. EPCRA continues to operate as it always has, by requiring emergency notice when notice is required under CERCLA section 103(a), 42 U.S.C. § 9603(a), and by requiring emergency notice absent a CERCLA requirement if a release "occurs in a manner which would require notification under section 103(a) of CERCLA." 42 U.S.C. § 11004(a)(2). The 2019 Rule does not interpret EPCRA's reporting requirements as having been changed in any way. This reading is consistent with statements indicating that EPCRA's underlying reporting requirements were unchanged by the FARM Act. But under EPCRA's longstanding terms, by adding a "manner" of release that is not subject to CERCLA's notice requirements, Congress exempted that same "manner" of release from EPCRA's notice requirements.

Nor does the 2019 Rule undermine EPCRA's purposes. *Cf.* Pl. Br. 31-32. EPCRA provides "communities with information on potential chemical hazards within their boundaries and to foster state and local emergency planning efforts to control any accidental releases." *Huls Am. Inc. v. Browner*, 83 F.3d 445, 446 (D.C. Cir. 1996). The emergency release notification requirements support that purpose by informing state and local agencies of *accidental* releases so these agencies can exercise the local emergency response plan if necessary. *See id.* But the air emissions from animal waste decaying on farms are not an accidental or

emergency release. Rather, as Plaintiffs acknowledge, they are baseline conditions under normal operations at certain farms. Pl. Br. 26.

Because Congress determined that air emissions from animal waste do not warrant CERCLA emergency notification, 42 U.S.C. § 9603(e)(1)(B), and because Congress excluded air emissions from animal waste on farms, a "manner" of release, EPCRA's emergency notice requirements do not apply under the statutes' plain language.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

Respectfully submitted,

/s/ *Matthew R. Oakes*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

BRIAN C. TOTH
ROBERT STOCKMAN
MATTHEW R. OAKES
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
matthew.oakes@usdoj.gov

Of Counsel:

NOEL M. JOHNSON
*Attorney*
U.S. Environmental Protection Agency

June 29, 2026
DJ# 90-7-3-31275

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 7,788 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Matthew R. Oakes*
MATTHEW R. OAKES
*Attorney*